IN THE CIRCUIT COURT OF THE NINTH JUDICIAL
CIRCUIT IN AND FOR ORANGE COUNTY, FLORIDA
PROBATE DIVISION

IN RE: GUARDIANSHIP OF
FRANK AMODEO

2008-CP-001369

## ORDER GIVING NOTICE OF FILING SUGGESTION OF CAPACITY AND APPOINTING PHYSICIAN TO EXAMINE WARD

A Suggestion of Capacity having been filed in this proceeding with respect to Frank Amodeo, the Ward, it is

ADJUDGED as follows:

1.　There is no guardian appointed for the Ward; therefore, no notice is required.

2.　Notice of this Order is to be informally served on the Ward, the attorney for the Ward, and the following additional interested person:

| | | |
|---|---|---|
| Claire Holland | 1130 University Blvd.<br>Suite B9 #361<br>Tuscaloosa, AL 35401 | Spouse of Ward |

3.　Service of this Order constitutes Notice of Filing Suggestion of Capacity.

4.　Any objections to the Suggestion of Capacity must be filed within twenty (20) days after service of this Notice and copies of such objections shall be served on all interested persons.

5.　Dr. Darlene Antonio, a clinical psychologist, is hereby appointed by the Court to examine the Ward and file a report of the examination with the Court within twenty (20) days after the date of this Order.

6.  As Dr. Antonio will be required to travel to Coleman Federal Penitentiary, Petitioner will pay reasonable costs and fees to Dr. Antonio.

DONE AND ORDERED in Chambers in Orlando, Orange County, Florida this _____ day of _____, 2013.

HONORABLE BELVIN PERRY, JR.
Chief Judge

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via U.S. Mail on this ___ day of _____, 2013, to Mr. Frank Amodeo, #48883-019, FCI Coleman Low, P/ O. Box 1031, Coleman, FL 33521, Myra P. Nicholson, Esq., PinoNicholson, PLLC, 189 South Orange Avenue, Suite 1650, Orlando, FL 32801, and Claire Holland, 1130 University Blvd, Suite B9 #361, Tuscaloosa, AL 35401.

Judicial Assistant/Attorney

ward

## Darlene B. Antonio, Ph.D., LLC
### Licensed Psychologist

2700 Westhall Lane, Suite 110, Maitland, Florida 32751
407-475-1025     407-475-1027 (Fax)

## SUGGESTION OF CAPACITY EVALUATION

**NAME:** Frank Amodeo          **CASE NUMBER:** 2008-CP-001369

**DATE OF BIRTH:** September 1, 1961 (Age: 52)

**DATE OF EVALUATION:** September 13, 2013

**DATE OF REPORT:** November 7, 2013

**REFERRAL QUESTION:** Mr. Amodeo was referred for a Suggestion of Capacity evaluation per Court order dated August 8, 2013 by the Honorable Belvin Perry, Jr. of the **Ninth Judicial Circuit  in and for Orange County, Florida, Probate Division.**

REVIEW OF MEDICAL RECORDS AND COLLATERAL INTERVIEWS:

1. August 2008 medical records from **McLean Hospital.**

2. Collateral phone interviews:

   September 22, 2013. **Dr. Jeffery Danziger.** Psychiatrist who previously evaluated Mr. Amodeo in 2008.

   September 23, 2013. **G. Michael Adkins.** President & Founder, All Clear Investigations. Mr. Adkins was formerly employed by Mr. Amodeo as a private investigator and body guard and was also a partner in one of his corporations.

   September 23, 2013. **Marty Flynn.** Private Investigator. Mr. Flynn has known Mr. Amodeo since 2000. He considers Mr. Amodeo to be a friend. In the past Mr. Amodeo worked as a consultant for Mr. Flynn's company. Mr. Flynn has also been employed by Mr. Amodeo and they have been partners in various companies and ventures. He currently assists Mr. Amodeo with his appellate cases.

   September 24, 2013. **Deborah Milotte.** Mr. Amodeo's sister.

   September 24, 2013. **Claire Holland.** Mr. Amodeo's wife.

3. Additional relevant information about Mr. Amodeo's case was obtained from his attorneys, Myra Nicholson, Esquire and Laurence J. Pino, Esquire.

## PROCEDURES AND TESTS:
- Clinical Interview with Mr. Amodeo
- Saint Louis Mental Status(SLUMS) Examination
- Minnesota Multiphasic Personality Inventory-2 (MMPI-2)

**BACKGROUND INFORMATION:** On June 11, 2008 the Court appointed a three person examining committee to evaluate Mr. Amodeo in response to a Petition To Determine Incapacity. As a member of the examining committee, this psychologist evaluated Mr. Amodeo on June 26, 2008.

Mr. Amodeo has a history of impressive business success with his company, Mirabilis Ventures. During his June 2008 evaluation with this psychologist he provided photographs and other documents to illustrate his international business activities. These included a photograph of himself with President Bush reportedly taken when Mr. Amodeo was attending a foreign policy meeting with high level government and NATO officials. During the evaluation, Mr. Amodeo exhibited a fixed delusional belief that he would be "Emperor of the World". He also asserted that he had special powers and could perform miracles to convince others to support his ambitions. Mr. Amodeo was under psychiatric treatment at that time and was diagnosed with Bipolar I Disorder with psychotic features. On June 30, 2008 the Court determined Mr. Amodeo to be mentally incapacitated and unable to make informed decisions for himself and a plenary guardianship was granted.

On August 6, 2008 Mr. Amodeo was admitted to The Pavillion at McLean Hospital, Harvard Medical School, Belmont, Massachusetts. While there he underwent a comprehensive evaluation, including medical, neurological, psychiatric, and neuropsychological examinations. Based on these test results, he was given diagnoses of Bipolar Disorder, Manic, with psychotic features and Mixed Personality Disorder, with narcissistic and antisocial features. Mr. Amodeo was also diagnosed with a history of stimulant (caffeinated beverages) dependency (partial remission). He was discharged on August 21, 2008 with medications including Depakote ER 3000 mg. h.s., Geodon 80 mg., and Rozerem 8 mg. h.s.

Mr. Amodeo's psychological tests results from McLean Hospital indicate that when he is emotionally stable his reality testing is likely to be adequate, however, when he experiences shifts in his moods and more intense emotions his reality testing becomes impaired. During these episodes his ability to think logically and coherently is impaired. He may exhibit delusional/paranoid thinking, misinterpret the actions or intentions of others, and have difficulty anticipating the

consequences of his own actions or recognizing the boundaries of appropriate behavior.

Mr. Amodeo's attorney, Myra Nicholson, provided this psychologist with the following details of Mr. Amodeo's legal case.

- On August 6, 2008, the United States government issued an indictment against Mr. Amodeo for various criminal actions, including conspiracy, wire fraud, obstruction of an agency proceeding, and failing to remit payroll taxes.

- On September 24, 2008, Mr. Amodeo signed an Amended Plea Agreement where he entered a guilty plea to conspiracy to defraud an agency of the United States, conspiracy to commit wire fraud, conspiracy to obstruct an agency proceeding, failure to collect and remit payroll taxes, and obstruction of an agency proceeding.

- On May 21, 2009 the Court accepted the Amended Plea Agreement and Mr. Amodeo was sentenced to 22 years and six months in federal prison. He has served approximately four years of this sentence to date.

**MENTAL HEALTH EXAMINATION:** Mr. Amodeo was examined in a private conference room in the visitor's center at the Coleman Federal Prison Low in Sumterville, Florida. He explained that he has petitioned for restoration of his rights because he believes that his thinking and judgment are no longer impaired. He discontinued his psychotropic medications about a year and a half ago because he thinks that the medications actually exacerbated his symptoms and delusions. He asserted that they also sedated him to the extent that he was cognitively impaired. He noted that his family (parents and siblings) has always been against the use of psychiatric medications or mental health treatment. The influence of this negative family attitude likely played a part in his decision to discontinue treatment.

Mr. Amodeo reported that soon after his incarceration at Coleman he began working at the prison law library as a clerk and took a class in appellate advocacy. Since that time he has been actively involved in assisting other inmates in filing appeals in their cases, not only at Coleman, but nationwide. He maintained that his success rate in these cases is the highest in the nation as compared to other attorneys. He believes it was a "miracle" that led him to this position of being able to help others.

Mr. Amodeo is adamant that he was wrongfully convicted. He is working on his own appeal, which he described as pending due to multiple complications. He asserted that after his rights are restored he will have his license as an attorney reinstated and then proceed with his appeal. He noted that he will never again

leave legal decisions affecting him in the hands of others. He expects that within five to six months his conviction will be overturned.

After his conviction is overturned and he is released from prison, Mr. Amodeo plans to pursue his aspirations to "change the world". He stressed that it is "impossible for me to let the world remain as it is because I cannot tolerate the injustices I see". Mr. Amodeo related that he will first publish treaties that illustrate his knowledge of economics, math, and physics. He will then incorporate this information into a "better version of the law". His second step will be to gain access to the heads of nations through NATO using financial incentives to gain support of world leaders and politicians. He believes there are many people that are interested in "realigning" with him to pursue these goals. His third step will be to "influence the electorate" through his skills as a speaker to explain the concept of the "Capital Genesis Business Model".

Mr. Amodeo stated that since his incarceration that he has learned to recognize the signs and symptoms of his Bipolar Disorder and therefore can manage these symptoms more effectively than in the past. He does allow that being in the structured environment of a prison helps him regulate his behavior. He stated that if released from prison that he will need and is agreeable to resuming treatment with medications. He acknowledged that there "is some truth to my Bipolar behavior". However, he also asserted that God means for him to change the world and that the doctors at McLean eventually recognized that he is so "high functioning that his ideas depart from the norm". However, they also told him that his grandiose plans served as a way of defending himself against depression. He noted that it does not concern him if others do not believe the things he says because he is so confident in himself that it does not matter. On the other hand, he does recognize how expressing these beliefs have hurt his credibility with others.

Mr. Amodeo was administered the **Minnesota Multiphasic Personality Disorder-2 (MMPI-2)**. The MMPI-2 is currently the most widely used and researched objective personality test. The MMPI-2 consists of a series of quantitative scales that can be used to diagnose psychiatric and personality disorders. Mr. Amodeo's profile is only marginally valid because he responded in a very careful manner to avoid giving the impression of having psychological problems. His scores on validity scales suggest a clear tendency to present an overly positive self image and to minimize personal faults. In spite of his effort to present a positive image some problems are evident in his MMPI-2 profile.

Mr. Amodeo's profile suggests that he has personality characteristics of emotional lability, overactivity, moodiness, and impulsiveness that may cause difficulties for him at times. Although he has a high need for achievement, his unconventional attitudes and inadequate judgment may make his performance variable. He is likely to behave erratically at times and have mood swings. He may perpetuate stress for himself due to his disorganized thinking. He reported a

**FRANK AMODEO**
Suggestion of Capacity Evaluation
September 13, 2013

2008-MH-001369-O

number of psychological concerns, persistent personality features, and unusual thoughts. This profile type is often associated with a severe personality disorder.

Mr. Amodeo's test responses suggest that he is an impulsive and somewhat hyperactive person who may be experiencing the symptoms of a mood disorder. He scored in the range that is consistent with a pattern of accelerated speech, delusions of grandeur or grandiose aspirations, and an exaggerated sense of self-worth and self-importance. People with these scores tend to have episodes of irritability, hostility, and aggressive behavior. He is not likely to recognize his own limitations and may make plans that are not realistic. He shows little interest in routine or detail and easily becomes bored and restless. He tends to have a low frustration tolerance and may have trouble inhibiting the expression of his impulses.

Mr. Amodeo was administered the **Saint Louis University Mental Status (SLUMS) Examination**, which is a brief oral/written screening exam given to people to assess for cognitive or memory impairment. Mr. Amodeo's score of 30 out of 30 on the **SLUMS** falls in the **Normal** Category, indicating that no significant memory or cognitive deficits were identified. He was able to give the correct year, day of week, month, and date. He was able to give his state of residence and to do simple addition and subtraction. He was able to recall five out of five objects after a short delay. He scored eight out of eight points on memory for details of a short story. He was able to remember and repeat up to four numbers in reverse order.

**COLLATERAL PHONE INTERVIEWS:** Mr. Adkins, Mr. Flynn, and Mrs. Millotte all reported that they have not observed any behaviors on the part of Mr. Amodeo that would cause them to have concerns about his ability to make informed decisions. Mrs. Holland did express concern that when Mr. Amodeo is experiencing a manic episode that he is likely to make impulsive decisions that are not in his best interest, particularly related to business and financial matters. Dr. Danziger was not able to provide any relevant information as he has had no contact with Mr. Amodeo since 2008.

**SUMMARY OF RESULTS:** Mr. Amodeo endorsed fewer symptoms on the current MMPI-2 than in 2008. However, validity scales indicate that he was putting forth effort to minimize and deny psychological problems on the MMPI-2. Mr. Amodeo's test results suggest that he is emotionally unstable. He continues to exhibit and report symptoms associated with mania. He remains grandiose in his aspirations and exhibits an exaggerated sense of self-worth and self-importance. He is not likely to recognize his own limitations. His test results indicate a low frustration tolerance and risk for impulsive behavior. He may have episodes of irritability, hostility, and aggressive behavior.

**FRANK AMODEO**
Suggestion of Capacity Evaluation
September 13, 2013

2008-MH-001369-O

**PROGNOSIS**: Mr. Amodeo's prognosis is guarded. Mr. Amodeo was discharged from McLean Hospital in August of 2008 with medications for treatment of his Bipolar I Disorder. Mr. Amodeo has discontinued these medications because he does not feel that he needs them. At this time his symptoms are not being treated or monitored by a psychiatrist or other mental health professional. This puts him at risk for episodes of mood swings and impaired reality testing, which impact his ability to think logically and coherently.

**OPINION AND RECOMMENDATIONS**: Legislative intent in adopting the current version of the Florida Guardianship Law is to make available the least restrictive form of guardianship to assist persons who are only partially incapable of caring for their needs, with incapacitated persons to be able to participate as fully as possible in all decisions affecting them.

In Mr. Amodeo's case, determining what decision-making he is capable of without risk of endangering his personal, medical or financial wellbeing is somewhat complicated. He is an intelligent person with many skills and abilities, which have allowed him to be impressively successful in business endeavors. On the other hand, his mood swings and grandiose and delusional thinking has significantly impacted his judgment and reasoning at times to his detriment.

Mr. Amodeo has discontinued his psychiatric medications against medical advice. He continues to experience symptoms that can impact his capacity to make informed decisions. His current confinement in a structured, predictable environment is helpful in terms of providing some behavioral controls for him. However, outside of this structured environment and without psychiatric management of his symptoms, he is at risk for mood swings and impaired judgment and thinking.

It is recommended that Mr. Amodeo have ongoing psychiatric management of his Bipolar Disorder and that he follow the recommendations of his treating psychiatrist. If he resumes medications and is psychiatrically stable he could be re-evaluated for restoration of any rights that have been removed.

**FRANK AMODEO**
Suggestion of Capacity Evaluation
September 13, 2013

2008-MH-001369-O

## EVALUATION OF ALLEGED INCAPACITATED PERSON'S ABILITY TO RETAIN RIGHTS (WITHOUT LIMITATION)

<u>Yes</u>  <u>No</u>

___  No  Make informed decisions regarding his/her right to marry.

Yes  ___  Make informed decisions regarding his/her right to vote.

Yes  ___  Make informed decisions regarding his/her right to personally apply for government benefits.

Yes  ___  Make informed decisions regarding his/her right to have a driver's license or operate a motor vehicle.

Yes  ___  Make informed decisions regarding his/her right to travel.

Yes  ___  Make informed decisions regarding his/her right to seek or retain employment.

___  No  Make informed decisions regarding his/her right to contract.

Yes  ___  Make informed decisions regarding his/her right to sue, or assist in the defense of suits of any nature against him/her.

___  No  Make informed decisions regarding his/her right to manage property or make any gift or disposition of property.

Yes  ___  Make informed decisions in determining his/her residence.

___  No  Make informed decisions regarding his/her right to consent to medical treatment.

Yes  ___  Make informed decisions affecting his/her social environment or other social aspects of his/her life.

FRANK AMODEO
Suggestion of Capacity Evaluation
September 13, 2013

2008-MH-001369-O

**SCOPE OF GUARDIANSHIP:** Those areas where the Mr. Amodeo LACKS THE CAPACITY to make informed decisions regarding his rights and where a less restrictive method of protective services is not adequate to protect him from a substantial risk of harm to his welfare or financial affairs.

<u>Lacks</u>  <u>Has</u>

_____  Has  Decisions concerning travel or where to live.

Lacks  _____  Consent to or refusal of medical or other professional care, counseling, treatment or service.

Lacks  _____  Permitting access to, refusal of access to or consent to release of confidential records and papers.

Lacks  _____  Control or management of real or personal property or income from any source.

Lacks  _____  Management of a business.

Lacks  _____  Acting as a member of a partnership.

Lacks  _____  Making contracts.

Lacks  _____  Payment or collection of debts.

Lacks  _____  Making gifts.

Lacks  _____  Initiation, defense or settlement of lawsuits.

Lacks  _____  Execution of a will or waiving the provisions of an existing will.

_____  Has  Decisions concerning education.

Lacks  _____  Admission to Florida State Hospital or any other public treatment facility on a voluntary basis under the provisions of applicable state law.

_____  _____  Other (explain): _____


The scope of the guardianship services recommended is:  **LIMITED**

**Due to his legal issues and interest in a broad range of business activities, it is recommended that, if possible, Mr. Amodeo's appointed Guardian be an attorney or law firm. The Guardian should operate exclusively in that capacity, as a disinterested party, free of undue influence or conflicts of interest. Specifically, the Guardian should not be involved in any personal, business, or other legal relationship with Mr. Amodeo, his attorneys, or business associates, past or present.**

**FRANK AMODEO**
Suggestion of Capacity Evaluation
September 13, 2013

2008-MH-001369-O

It is believed that this is a correct characterization and report of the information accumulated by this examiner and presented in this report. If there is any information felt to be substantially misleading, unclear, inaccurate, or misreported, or if there is any substantial or significant information that is omitted, please notify this examiner immediately and indicate the information to be added or corrected. Otherwise, all information and records received will be assumed to be substantially accurate and complete as stated, observed, and attributed.

Thank you for allowing me to evaluate Mr. Amodeo. Should you have any questions or concerns regarding this evaluation, please do not hesitate to contact my office.

**Executed this 7th day of November, 2013.**

*Darlene B. Antonio, Ph.D.*
Darlene B. Antonio, Ph.D.
Licensed Psychologist

*A copy of this report was mailed
11-12-13.*

*Mary Lynne Jewell
Deputy Clerk*

IN THE CIRCUIT COURT IN AND FOR ORANGE COUNTY, FLORIDA

IN RE: GUARDIANSHIP OF          )

FRANK AMODEO               )
                                  )
                                  )

PROBATE MENTAL HEALTH DIVISION
Case Number 2008-MH-000651-0
DIVISION 1

Darlene B. Antonio, Ph.D.
## REPORT OF EXAMINING COMMITTEE

The undersigned, being the committee appointed to examine, FRANK AMODEO

reports that they have examined that person, as directed by the Order Appointing Examining

Committee and the report of the comprehensive examination, with evaluations and

recommendations as follows:

I.      GENERAL INFORMATION

Name of Person: FRANK AMODEO

Date of Examination:  June 26, 2008

Date of Birth: September 1, 1961

Residence of Person: 1159 Delaney, Orlando, FL 32801

Name and address of extended care facility (if any):

Alleged incapacity is: Bipolar Disorder, Type I, current episode Mania with Psychotic
Features.

DIAGNOSIS (short summary): Mr. Amodeo presents with symptoms consistent with a
Bipolar Disorder and also exhibits an associated Delusion Disorder. His treating
psychiatrist, Dr. Krotenberg is also considering a diagnosis of Schizoaffective Disorder.

PROGNOSIS (short summary): Guarded. Mr. Amodeo is reported to be noncompliant with
treatment in the past. His delusional beliefs appear to be quite long-standing and ingrained.

RECOMMENDED COURSE OF TREATMENT (short summary): Mr. Amodeo's long-
standing, severe symptoms require intensive psychiatric treatment. He reported that his
attorney is making arrangements for his admission into an inpatient psychiatric treatment
program.

EXHIBIT B

FRANK AMODEO                                    2008-MH-000651-0

## II. EVALUATION OF ALLEGED INCAPACITATED PERSON'S ABILITY TO RETAIN RIGHTS (WITHOUT LIMITATION)

THE EXAMINING COMMITTEE IS SPECIFICALLY CHARGED WITH DETERMINING WHETHER THE ALLEGED INCAPACITATED PERSON HAS THE ABILITY TO EXERCISE THOSE RIGHTS WHICH THE PETITIONER HAS REQUESTED BE REMOVED IN THE PETITION TO DETERMINE INCAPACITY.

Legislative intent in adopting the current version of the Florida Guardianship Law is to make available the least restrictive form of guardianship to assist persons who are only partially incapable of caring for their needs, with incapacitated persons to be able to participate as fully as possible in all decisions affecting them.

| Yes | No | |
|-----|-----|-----|
| X | ___ | Make informed decisions regarding his/her right to marry. |
| X | ___ | Make informed decisions regarding his/her right to vote. |
| X | ___ | Make informed decisions regarding his/her right to personally apply for government benefits. |
| X | ___ | Make informed decisions regarding his/her right to have a driver's license or operate a motor vehicle. |
| X | ___ | Make informed decisions regarding his/her right to travel. |
| X | ___ | Make informed decisions regarding his/her right to seek or retain employment. |
| ___ | X | Make informed decisions regarding his/her right to contract. |
| ___ | X | Make informed decisions regarding his/her right to sue, or assist in the defense of suits of any nature against him/her. |
| ___ | X | Make informed decisions regarding his/her right to manage property or make any gift or disposition of property. |
| X | ___ | Make informed decisions in determining his/her residence. |
| ___ | ___ | Make informed decisions regarding his/her right to consent to medical treatment. |
| X | ___ | Make informed decisions affecting his/her social environment or other social aspects of his/her life. |

FRANK AMODEO

2008-MH-000651-0

## III. COMPREHENSIVE EXAMINATION AND ATTENDING PHYSICIAN'S REPORT

Please give the results of the comprehensive examination and the committee members'

assessment of information provided by the attending or family physician, if any.  Attach extra

sheets, if necessary. If the attending or family physician is available for consultation the

committee must consult with the physician.

**Physical Examination:** This examiner defers to the psychiatrist, who is a medical doctor for this part of the evaluation.

**Mental Health Examination:** Mr. Amodeo was neatly groomed and dressed in business attire at the time of the evaluation. He reported that he graduated from law school and worked for some time as an attorney before he was disbarred and incarcerated on charges of defrauding a client. He also completed two years of a doctoral economic program. Mr. Amodeo reported that he was first diagnosed with Bipolar Disorder in 1995 or 1996 and participated in treatment with a psychiatrist and a therapist from 2000-2003. Mr. Amodeo reported symptoms (e.g. racing thoughts) consistent with a Bipolar Disorder and acknowledged that he often makes impulsive decisions, frequently involving large sums of money. For example, he stated that he once make a decision in 15 minutes to purchase a clothing boutique.

Mr. Amodeo interacted appropriate with this examiner. He was oriented to person, place, time, and date. On the Saint Louis University Mental Status Examination (SLUMS) Mr. Amodeo's score of 27 out of 30 fell in the Normal range and he exhibited only mild attentional problems. Rate of speech was normal. Affect was appropriate to situation. He denied homicidal or suicidal ideation or intent. Form of thought was relevant and coherent at times and at other times disorganized and illogical.

Content of thought was notable for Mr. Amodeo's delusional beliefs. He frankly discussed his plan to establish an empire and become "Emperor of the World" and asserted that "It's not a joke and I've made great strides toward this." Mr. Amodeo explained that he has been planning this since his teenage years. He related that he read a book that "gave me a decision criteria that would let me do it well, as long as I made decisions that are in everyone's best interest." He also stated that when the movie "The Omen" was released that "people thought I was the Antichrist. Since then I prayed every day and decided to see what path God would take me down."

Mr. Amodeo indicated that he has been separated from his wife over the past year due to their frequent conflicts about the "empire stuff" and noted that his wife "hates to hear this." He has recently moved back into the home. Mr. Amodeo reported that he frequently sees "colors and lights" and that he sees stars in the sky "shift and move." He stated that he can "focus" and have an out-of-body experience at will. Mr. Amodeo believes that in the future he will be able to "transmute molecules" and maintained that as a child he was once able to transport himself and a group of friends off of a railroad track to avoid an oncoming train. He believes he will be able to

Page 3 of 7

FRANK AMODEO

2008-MH-000651-0

perform miraculous feats, such as "solidifying or crystallizing the air". He further explained "any miraculous event that is repeatable, so that it is no longer deniable, is enough to trigger people to follow the plan." He gave as an example, miracles performed by Christ that inspired people to follow him.

Mr. Amodeo maintained to this examiner that he has "prophetic visions" that allow him to foresee the outcome of business transactions and his legal situation. He asserted that his attorneys are wrong in their handling of his case and are not "reading the law correctly." He believes that he has a better understanding of the law and that his attorneys should "take an entirely different approach." He sometimes makes plans (e.g. "to hold a press conference and reveal everything") that his attorneys object to. In regard to his current legal difficulties he believes he can see the "final outcome" and that the "U.S. Attorney's office will have to swallow the fact that they made a big mistake and will drop the suit. I will then go on with my plan and have some credibility." He estimated that he will have ten million in assets after his case is concluded and that it will take approximately eleven years to accomplish his goal of establishing his empire. When asked how he would react if things did not turn out well for him, he stated that he believes he will die if the legal issues facing him are not resolved satisfactorily. He asserted "I think this is it for me. I will win this time or end up dead." Initially he visualized his death as an "Elijah fire in the sky event" but his recent problems with high blood pressure have led him to consider that there are "lots of ways it could just be over."

This examiner administered the Minnesota Multiphasic Personality Inventory-2 (MMPI-2) to Mr. Amodeo. The MMPI-2 is currently the most widely used and researched objective personality inventory. The MMPI-2 consists of a series of quantitative scales that can be used to diagnose abnormal behavior. Mr. Amodeo's MMPI-2 profile appears to be valid. On this inventory, Mr. Amodeo's profile suggests delusional beliefs and schizoid personality traits. His profile indicates severe long-term psychological problems.

**Functional Assessment:** Mr. Amodeo is capable of performing activities of daily living (e.g. personal hygiene, preparing food, dressing).

Consultation with Family Physician:

 Yes    No    If not, why?

This examiner consulted with Dr. Jeffrey Danziger (407-679-6400), a psychiatrist, who conducted a forensic psychiatric evaluation of Mr. Amodeo, and with Dr. Jeffrey Krotenberg (407-324-0405), Mr. Amodeo's current treating psychiatrist.

FRANK AMODEO

2008-MH-000651-0

Assessment of prior clinical history, treatment records, social records, and reports, if any:

- May 28, 2008 letter from Dr. Danziger to attorney, Harrison Slaughter, detailing Dr. Danziger's evaluation of Mr. Amodeo.

- June 11, 2008 Orlando Sentinel article about Mr. Amodeo and his legal case.

- Portions of Mirabilis Ventures, September 2005 Presentation DVD, featuring Mr. Amodeo as speaker.

- Portions of Amodeo/Evsiven Inteview on DVD.

- High school newspaper articles provided by Mr. Amodeo, describing how Mr. Amodeo, as student council president, envisioned his high school as a country instead of a school and created "Imperialism Day" as an "unorthodox approach to school spirit."

- Various photographs provided by Mr. Amodeo, including his attendance at a foreign policy meeting with President Bush and high level government and NATO officials.

- Papers detailing Mr. Amodeo's sponsorship and speaking engagement through the "Riga NATO summit 2006 Support Committee".

- Various documents detailing aspects of Mirabilis' acquisition strategies, due diligence and risk analysis for international transactions, etc.

- Records have been requested from Joseph Trim, LMHC who saw Mr. Amodeo in therapy from 2000-2003.

- Draft of Memorandum #24 – Star Wars, prepared by Mr. Amodeo's staff that details his mental health history.

If any of the three parts of the comprehensive examination were not indicated or could not be accomplished for any reason, the reason for the omission must be explained below.

FRANK AMODEO

2008-MH-000651-0

## IV. SCOPE OF GUARDIANSHIP.

Florida law grants authority to a guardian only in those areas of decision-making in which the evidence indicates the person is incapacitated. This allows the individual to retain control over the other aspects of his/her life.

Please indicate those areas where the person LACKS THE CAPACITY to make informed decisions regarding his/her rights and where a less restrictive method of protective services is not adequate to protect the person from a substantial risk of harm to his/her welfare or financial affairs.

(Check appropriate line)

**Lacks Has**

| Lacks | Has | |
|---|---|---|
| ___ | _X_ | Decisions concerning travel or where to live. |
| _X_ | ___ | Consent to or refusal of medical or other professional care, counseling, treatment or service. |
| _X_ | ___ | Permitting access to, refusal of access to or consent to release of confidential records and papers. |
| _X_ | ___ | Control or management of real or personal property or income form any source. |
| _X_ | ___ | Management of a business. |
| _X_ | ___ | Acting as a member of a partnership. |
| _X_ | ___ | Making contracts. |
| _X_ | ___ | Payment or collection of debts. |
| _X_ | ___ | Making gifts. |
| _X_ | ___ | Initiation, defense or settlement of lawsuits. |
| _X_ | ___ | Execution of a will or waiving the provisions of an existing will. |
| ___ | _X_ | Decisions concerning education. |
| _X_ | ___ | Admission to Florida State Hospital or any other public treatment facility on a voluntary basis under the provisions of applicable state law. |
| ___ | ___ | Other (explain): _____ |

Page 6 of 7

**FRANK AMODEO**                                    2008-MH-000651-0

Please list specific evidence of the person's incapacity to exercise informed decisions in the

categories previously checked.

On examination, Mr. Amodeo exhibits a fixed delusional belief that he will be "Emperor of
the World". He believes that he has special powers and will be able to perform miracles to
convince others to support his cause. He has been diagnosed with a Bipolar Disorder and
reports symptoms consistent with this disorder. Mr. Amodeo's psychiatric symptoms and
delusional beliefs are long-standing, dating back to his teenage years. Mr. Amodeo's
delusional beliefs, disorganized thinking, and impulsive, reckless behaviors significantly
impair his ability to make informed decisions regarding his medical care, and legal and
financial affairs.

If the committee has determined that the alleged incapacitated person is incapacitated, the

scope of the guardianship services recommended is:   **PLENARY**      **LIMITED**

The members of the examining committee further state that they have each examined the

alleged incapacitated person in accordance with the requirements of Section 744.331 of the

Florida Statutes, performing the examination necessary to determine which, if any of the rights,

which the petitioner has requested be removed, the allegedly incapacitated person can no longer

sufficiently nor adequately exercise, and they hereby present to the Court their conclusions,

evaluations and recommendations.

At least one member of the committee has knowledge of the type of incapacity alleged in the

Petition to Determine Incapacity.

Executed this 30th day of June 2008.

Darlene B. Antonio, Ph.D.,
Licensed Psychologist
2700 Westhall Lane, Suite 110, Maitland, FL 32751
407-475-1025

A copy of this report has been served on Petitioner's Attorney and on the Court appointed
Attorney for alleged incapacitated person on_____20____.

_____
Deputy Clerk

JUN-30-08 12:30 PM   R  '.Ballentine                    4F  :321471                  P.06

IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT, IN AND FOR
ORANGE COUNTY, FLORIDA

IN RE: GUARDIANSHIP OF              PROBATE MENTAL HEALTH DIVISION
Frank Amodeo                        CASE NUMBER: 2008-MH-000851-O
                                    DIVISION 1

                 Dr. R.E. Ballentine

              REPORT OF EXAMINING COMMITTEE

    The undersigned, being the committee appointed to examine Frank Amodeo
reports that they have examined that person, as directed by the Order Appointing Examining
Committee and the report of the comprehensive examination, with evaluations and
recommendations, is as follows:

I.    GENERAL INFORMATION

Name of Person: Frank Amodeo

Date of Examination : June 29 2008

Date of Birth: 09/01/1961

Residence of Person: 1159 Delaney
Orlando FL 32801

Name and address of Extended Care Facility (if any):

Alleged Incapacity is: Bipolar Disorder - Manic

DIAGNOSIS (short summary) Bipolar Disorder Type I manic.

PROGNOSIS (short summary) guarded

RECOMMENDED COURSE OF TREATMENT (short summary) 1. Supervisory Care
2. Psychiatric treatment of Bipolar Disorder

                    EXHIBIT A

                                                   JUL 0 2 2008

II.    EVALUATION OF ALLEGED INCAPACITATED PERSON'S ABILITY TO RETAIN
       RIGHTS (without limitation)

THE EXAMINING COMMITTEE IS CHARGED WITH DETERMINING WHETHER THE
ALLEGED INCAPACITATED PERSON HAS THE ABILITY TO EXERCISE THOSE RIGHTS
SPECIFIED IN SECTION 744.3215, FLORIDA GUARDIANSHIP LAW,  WITH SPECIFIC
ATTENTION TO THOSE RIGHTS ENUMERATED IN THE PETITION TO DETERMINE
INCAPACITY.

(NOTE:  Legislative intent in adopting the current version of the Florida Guardianship Law is to
make available the least restrictive form of guardianship to assist persons who are only partially
incapable of caring for their needs, with incapacitated persons to be able to participate as fully
as possible in all decisions affecting them.)

The alleged incapacitated person has the capacity to:  (Circle yes or no)

| | | |
|---|---|---|
| YES | (NO) | make informed decisions regarding his/her right to marry. |
| YES | (NO) | make informed decisions regarding his/her right to vote. |
| YES | (NO) | make informed decisions regarding his/her right to personally apply for government benefits. |
| YES | (NO) | make informed decisions regarding his/her right to have a driver's license or operate a motor vehicle. |
| YES | (NO) | make informed decisions regarding his/her right to travel. |
| YES | (NO) | make informed decisions regarding his/her right to seek or retain employment. |
| YES | (NO) | make informed decisions regarding his/her right to contract. |
| YES | (NO) | make informed decisions regarding his/her right to sue, or assist in the defense of suits of any nature against him/her. |
| YES | (NO) | make informed decisions regarding his/her right to manage property or make any gift or disposition of property. |
| YES | (NO) | make informed decisions in determining his/her residence. |
| YES | (NO) | make informed decisions regarding his/her right to consent to medical treatment. |
| YES | (NO) | make informed decisions affecting his/her social environment or other social aspects of his/her life |

JUN-30-00 12:31 PM  R  .Ballentine                    40 :321471              P.08

## III. COMPREHENSIVE EXAMINATION AND ATTENDING PHYSICIAN'S REPORT

Please give the results of the comprehensive examination·and the committee members'
assessment of information provided by the attending or family physician, if any. Attach extra
sheets, if necessary. If the attending or family physicians is available for consultation the
committee must consult with the physician.

Physical Examination: 47 year old Ambulatory white male with a history of asthma
irregular heart beat and hypertension
P-70 R-17
cranial Nerves II-XII with in normal limits
Mental Health Examination: range of motion - reflexes 1+6 laterally
47 yes old married white male who was casually groomed and dressed. He was alert
cooperative and oriented x3. His mood was euphoric. His memory was good. He was
hyperverbal and his thoughts were pressured and tended to ramble with grandiose thought
Functional Assessment: (religious Fr him)
   able to do basic activities of daily living but his Bipolar (empties of the world)
impaired his decision making
If any of the three parts of the comprehensive examination were not indicated or could not be
accomplished for any reason, the reason for the omission must be explained.

Consultation with Family Physician:

_____

Yes_____ No ✓ . If no, why?  None listed – Dr Danziger's 5/28/ evaluation
                                                                    reviewed

Assessment of prior clinical history, treatment records, social records, and reports, if any:
He has a long history of hyperactivity and productivity. Graduated Stan
law school and practiced law in Georgia with/ convicted of mail fraud
In prison was diagnosed Cyclothymia. Recently treated by Dr Hoolenbee
with Seroquel and Depakote with some improvement.

III.    SCOPE OF GUARDIANSHIP

(NOTE:  Florida law grants authority to a guardian only in those areas of decision making in which the evidence indicates the person is incapacitated.  This allows the individual to retain control over the other aspects of his or her life.)

Please indicate those areas where the person LACKS THE CAPACITY to make informed decisions regarding his/her rights and for which a less restrictive method of protective services is not adequate to protect the person from a substantial risk of harm to his/her personal welfare or financial affairs.

(Circle lacks or has)

| | | |
|---|---|---|
| LACKS | HAS | Decisions concerning travel or where to live. |
| LACKS | HAS | Consent to or refusal of medical or other professional care, counseling, treatment or service. |
| LACKS | HAS | Permitting access to, refusal of access to or consent to release of confidential records and papers. |
| LACKS | HAS | Control or management of real or personal property or income from any source. |
| LACKS | HAS | Management of a business. |
| LACKS | HAS | Acting as a member of a partnership. |
| LACKS | HAS | Making contracts. |
| LACKS | HAS | Payment or collection of debts. |
| LACKS | HAS | Making gifts. |
| LACKS | HAS | Initiation, defense or settlement of lawsuits. |
| LACKS | HAS | Execution of a will or waiving the provisions of an existing will. |
| LACKS | HAS | Decisions concerning education. |
| LACKS | HAS | Admission to Florida State Hospital or any other public treatment facility on a voluntary basis under the provisions of applicable state law. |
| LACKS | HAS | Other (list): |

Specific evidence of the person's incapacity to exercise informed decisions in the

JUN-30-08 12:32 PM    P   '.Ballentine          4r  ï321471          P.18

If the committee member has determined that the alleged incapacitated person is incapacitated, the scope of the guardianship services recommended is:

PLENARY     LIMITED     (Circle One)

The member of the examining committee certifies to have examined the alleged incapacitated person in accordance with the requirements of Section 744.331 of the Florida Guardianship Law, performing the examination necessary to determine which if any, of the rights the petitioner has requested to be removed the allegedly incapacitated person can no longer sufficiently nor adequately exercise.  These conclusions, evaluations and recommendations are hereby presented to the Court.

(At least one member of the committee has knowledge of the type of incapacity alleged in the Petition to Determine Incapacity.)

Executed this ___30___ day of ___June___, 2008.

Signature: R E Ballentine MD

A copy of this report has been served on the Petitioner's Attorney and the Court appointed Attorney for the alleged incapacitated person on ___June 30, 2008___.

Deputy Clerk

## McLean Hospital

115 Mill Street, Belmont, Massachusetts 02478-9106
Telephone 617 855-2000, FAX 617 855-3299



### SUBSTANCE ABUSE CONSULTATION NOTE

Patient Name:        Frank Amodeo
Medical Record #:    170910
Date of Birth:       09/01/60
Date of Evaluation:  08/09/08

I was asked to see Mr. Amodeo for the purpose of a substance use consultation. The details of his psychiatric history are documented elsewhere in the chart.

Mr. Amodeo is a 47-year-old married white man who lives in Orlando, Florida with his wife. He stated that, with the exception of a sip of champagne at his own wedding, he has never consumed alcohol. He also denies any illicit substance use or abuse of prescription medications.

Mr. Amodeo did report a significant history of drinking stimulant beverages throughout most of his life. He said that he drank at least 1.5 gallons of caffeinated soda starting at age 9 or 10 when he was in Little League and that this pattern continued through age 16. Mr. Amodeo said that between ages 16 and 29 his consumption of caffeinated beverages increased to approximately 3 gallons per day. He noted that he typically would consume a pitcher of iced tea per sitting. Mr. Amodeo said that between ages 29 and 40, he was prescribed Isoclure for asthma. He said that when this medication was no longer available, he substituted 16 Sudafed tablets daily in addition to his 3-gallon per day consumption of caffeinated beverages. Mr. Amodeo said that he was "almost continuously manic" during this approximately 11-year period with the exception of a 6-month hiatus in 1999, during which he did not take any Sudafed and his consumption of stimulant beverages was reduced to approximately 1 gallon per day.

Mr. Amodeo said that at age 40 he began running in order to lose weight and improve his overall health. He noted that he no longer required Sudafed and found that whenever he had a cold or flu and took cold medication with a stimulant, he felt "buzzed" and the people around him noticed a significant elevation in his mood. He said that during this period, a psychologist named Dr. Lewis raised the suspicion of a possible bipolar disorder

Mr. Amodeo said that his physican recommended that Mr. Amodeo decrease his consumption of stimulant beverages and, prior to entering the McLean Hospital Pavilion, Mr. Amodeo was able to reduce his consumption from 3 gallons per day to 2 gallons per day and is working to further reduce his stimulant beverage consumption.

A Teaching Facility of Harvard Medical School / An Affiliate of the Massachusetts General Hospital / A Member of Partners HealthCare System, Inc.

Assessment: In my opinion, Mr. Amodeo meets criteria for Stimulant Dependence in addition to his other psychiatric symptoms. The co-occurrence of chemical dependency and psychiatric illness suggests that a comprehensive treatment program must address both disorders simultaneously.

Mr. Amodeo acknowledged the ways in which stimulant beverage use has helped him to maintain a high level of energy throughout high school, where he earned a 3.9 GPA from Oakridge High School in Orlando, "mostly straight A's" from the University of Central Florida, and enabled him to attend Emory Law School during the day while pursuing a graduate degree in economics at night. Mr. Amodeo also acknowledged the ways in which stimulant beverage use has helped him to bolster his self-confidence and ability to manage multiple tasks simultaneously.

Mr. Amodeo acknowledged the extent of his stimulant beverage use during the past approximately four decades and the magnitude of the lifestyle changes that will be required to discontinue his dependency and cope with functioning at a less rapid pace. I believe that Mr. Amodeo would benefit from psychoeducation regarding the relationship between stimulant beverage use and his psychiatric instability, and urge Mr. Amodeo to continue individual psychotherapy in addition to psychopharmacological management to help maintain stability.

Recommendations

1. Continue psychopharmacological and psychotherapeutic strategies to maintain stability.

2. Continue to reduce stimulant beverage use under the supervision of a physician.


Jennifer Taylor, Ph.D.

## Nutrition Consult/ McLean Pavilion Program

Name:  Frank Amodeo
Date of Consult:  8/12/08

Referral Purpose:  To assess current nutrition status and eating behaviors and to make recommendations to help promote healthy weight management, optimal health and normalized eating.

### Summary of Consult

Frank is a 47-year old man who comes to the Pavilion for treatment and evaluation of symptoms related to Bipolar Disorder. He notes an 18lb weight gain since November due to Depakote. This was on top of the 30lbs he had gained in the 8 years prior. He attributes weight gain to sedentary lifestyle and increased focus on work accompanied by a lot of stress. However, he has been controlling portions over the past 5-6 weeks after showing signs of insulin resistance. Frank has also started walking 4 miles most days at the beginning of July and is gradually rebuilding some muscular stamina.

Frank's weight is 222lbs, 156% of ideal weight for height of 5'6". His BMI is 36 placing him in the obese category and at risk for health complications. Labs on 8/07/08 indicate Hemoglobin A1c is elevated at 7.1, but glucose was normal at 99. Lipids were not available at time of consult. Moderate weight loss of 10-15% would significantly improve blood sugar regulation and help prevent high cholesterol/ heart disease in the future. This would be a weight goal of 190-200lbs. Recommend working toward this over the course of the year and reevaluating at that point.

Frank reports that his diet until recently consisted mainly of calorie dense fast food. His eating per recent diet recall has improved some now that he is being mindful about choices: A typical day includes two eggs with cheese or an omelet, bacon and wheat toast (at a diner), a roast beef or turkey sandwich for lunch and a filet mignon, baked potato with butter and vegetables for dinner. Although this is an improvement, Frank would benefit from decreasing saturated fat and increasing intake of fruits and vegetables. It may be helpful for him to work with a dietitian who can help him strategize around making gradual dietary changes.

Frank notes a tendency to turn to high carbohydrate foods to elevate his mood. Caffeine serves this purpose as well; "it counteracts the depression". Food also offers distraction and pleasure. Frank goes on to say that he tends to snack more when anxious. He would benefit from developing some alternative coping skills and increasing awareness of physical hunger cues.

Although Frank drinks a lot of caffeinated beverages, he takes in very little other fluid, including water. He drinks 3 gallons of iced tea a day which is a decrease from the 5-6 gallons he was drinking a couple months ago. Caffeine could be contributing significantly to anxiety and it would be beneficial for him to gradually cut back and add in more water. Frank has started taking fish oil pills (6g/day). Also recommend a multivitamin and B-complex due to high level of stress.

### Recommendations
- Gradual weight loss of 10-15% (190-200lbs)
- Decrease saturated fat in diet (i.e. cheese, red meat, butter)
- Increase fruit and vegetable intake

- Increase intake of lean proteins (fish, chicken, beans, tofu)
- Regular exercise 45-60 minutes a day optimally for weight loss, starting at low intensity and gradually progressing
- Continue fish oil supplement
- Add multivitamin and B-complex
- Gradually cut down on iced tea to ≤ 40oz a day and increase water/other fluids
- Work with a dietitian around weight loss
- Avoid concentrated sweets (juice, sugar, sweets)
- Good regulation of blood sugar

Amy Gleason Gardner, MS RD
Nutrition Therapist
Pavilion Program, McLean Hospital
617-855-2268

IN THE CIRCUIT COURT FOR ORANGE COUNTY,
FLORIDA                          PROBATE DIVISION

IN RE:

FRANK AMODEO                    File No. 48-2008-CP-1369-O

                                Division  Mental Health

an alleged incapacitated
person

## AMENDED ORDER APPOINTING EXAMINING COMMITTEE

On the petition of Dr. Jeffrey Danziger to determine if Frank Amodeo, whose age is 48 years and whose address is 1159 Delaney, Orlando, Florida 32801, is an incapacitated person, it is ADJUDGED as follows:

1.     The following three persons shall comprise the committee to examine the alleged incapacitated person:

| NAME | ADDRESS |
|------|---------|
| a. Dr. R.E. Ballentine | 1840 Lake Emma Road, Longwood Florida 32750 |
| | (407) 332-1471 |
| b. Dr. Darlene Antonio | 2700 West Hall Lane, Suite 110, Maitland, Florida 32751 |
| | (407) 475-1025 |
| c. Bob Decker | 826 South Primrose Road, Orlando, Florida 32803 |
| | (321) 663-5100 |

2.     The committee shall examine the alleged incapacitated person in accordance with the standards set forth in Section 744.331, Florida Guardianship Law. The examining committee shall determine the ability of the alleged incapacitated person to exercise those rights specified in Section 744.3215, Florida Guardianship Law. Each member of the examining committee shall submit a written report within fifteen (15) days of the date of this order, conforming to the requirements of Section 744.331(3)(f) & (g), Florida Guardianship Law. The report must be filed with this Court at least five (5) days before the hearing on the petition and a copy of the report must

be served on the petitioner and on the alleged incapacitated person within three (3) days after the report is filed and at least five (5) days before the hearing on the petition.

3.      The examining committee shall have access to, and may consider, previous examinations of the person, including but not limited to, habilitation plans, school records, and psychological and psycho-social reports voluntarily offered for use by the alleged incapacitated person.

4.      The Clerk of this Court shall provide the members of the examining committee copies of this order, of the petition to determine incapacity, of all petitions for appointment of guardians, and of the notice of filing of the petition to determine incapacity.

ORDERED on _June 11_ , _2008_

_____
Circuit Judge